# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

JOSHUA WALLIS,

      Plaintiff,

v.                                                                Case No. 10-CV-647

AD ASTRA RECOVERY SERVICES, INC.,

      Defendant.

_____

## ORDER

On July 29, 2010, the plaintiff, Joshua Wallis ("Wallis"), filed a complaint against the defendant, Ad Astra Recovery Services, Inc. ("Ad Astra"), alleging violations of the Fair Debt Collection Practices Act ("FPCPA"), 15 U.S.C. § 1692 *et seq.* (Docket #1). Specifically, Mr. Wallis alleges that the defendants, in attempting to collect $625, violated the FPCPA by: (1) contacting the plaintiff after he sent a cease and desist letter; (2) "engaging in conduct the natural consequence of which is to harass, oppress, or abuse the Plaintiff in connection with the collection of a debt"; and (3) "causing a telephone to ring repeatedly and continuously with the intent to annoy, abuse, and harass" Mr. Wallis. (Compl. ¶ 17). In response to the complaint, on October 4, 2010, Ad Astra filed a motion to compel arbitration. (Docket #4). With the benefit of the parties' briefs, the court proceeds to examine the legal efficacy of the defendant's motion.

The defendant submits that the plaintiff, a resident of Wisconsin, applied for and obtained a loan from Speedy Cash, a Kansas Corporation, on October 30, 2009.[1] (Def.'s Br. at 2). On that same day, Mr. Wallis and an agent for Speedy Cash signed an agreement that provided the plaintiff with $500. (Docket #6 Ex. A at 1). In exchange for the immediate loan of $500, the plaintiff agreed to pay $625 on November 13, 2009. *Id.* The parties also agreed to a series of contract provisions, including a lengthy arbitration provision that stated, in relevant part, that "[u]nless prohibited by applicable law and unless you reject the Arbitration provision . . . you and we agree that either party may elect to require arbitration of any Claim." *Id.* An affidavit attached to the defendant's motion indicates that Speedy Cash has indeed elected to "require Plaintiff to submit [his] claims against Ad Astra to arbitration." (Miller Aff. ¶ 8). The scope of the arbitration provision of Wallis and Speedy Cash's agreement is quite broad, with the term "Claim" being defined as:

> any claim, dispute or controversy between you and us ("including related parties" . . . ) that arises from or relates in any way to Services you request or we provide, now, in the past or in the future; the Applications (or any prior or future application); any agreement relating to Services ("Services Agreement"); any of our marketing, advertising, solicitations and conduct relating to your request for Services, **our collection of any amounts you owe**, our disclosure of or failure to protect any information about you; or the validity, enforceability or scope of this Arbitration Provision. "Claim" is to be given the broadest

---

[1] The court notes that the plaintiff, in his brief in opposition, notes in passing that he did not sign the underlying contract that the defendant asserts requires arbitration. However, the plaintiff has provided no admissible evidence to support his claim and "oppose[s the] defendant's motion as if he had signed the contract." (Pl.'s Resp. Br. at 3). The court will operate under the same assumption that the plaintiff did sign the underlying agreement.

> possible meaning and includes claims of every kind and nature, including but not limited to, initial claims, counterclaims, cross-claims and third-party claims, and claims based on any constitution, statute, regulation, ordinance, common law rule . . . and equity.

(Docket #6 Ex. A at 3) (emphasis added). The agreement further specifies that the "related parties" include "any parent company and affiliated entities" "including Ad Astra Recovery Services, Inc." *Id.* at 4. The contract further provides that the administrator of an arbitration can be, in relevant part, the American Arbitration Association. Subsequently, Speedy Cash hired Ad Astra to collect the underlying debt (Def.'s Br. at 3), and the plaintiff's complaint is directed towards actions the defendant allegedly took in attempting to collect $625 for Speedy Cash. With this background in mind, the court proceeds to the examine the legal framework for ruling on a motion to compel arbitration.

Motions to compel arbitration are reviewed under the summary judgment standard set forth under Fed. R. Civ. P. 56, where the court must consider "all of the non-moving party's evidence construe all reasonable inferences in the light most favorable to the non-moving party." *Tickanen v. Harris & Harris, Ltd.*, 461 F. Supp. 2d 863, 866 (E.D. Wis. 2006) (internal citations omitted). The statutory basis for a motion to compel arbitration stems from the Federal Arbitration Act ("FAA"), which allows a party to an arbitration agreement to petition the district court to compel arbitration in the manner provided for in the agreement. 9 U.S.C. § 4. If a case pending in the district court involves issues referable to arbitration under an

arbitration agreement, a party may move the court to stay the proceedings pending arbitration of those issues. 9 U.S.C. § 3. In order to determine whether a binding arbitration agreement exists, the court must look to principles of state contract law. *Tinder v. Pinkerton Security*, 305 F.3d 728, 733 (7th Cir. 2002); *see* 9 U.S.C. § 2 (mandating enforceability of valid written arbitration agreements).

The parties' briefs fail to include substantive discussion regarding the body of law that will govern the interpretation of the arbitration agreement. Generally, a federal court employs the conflict-of-laws rules of the state where it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941). In Wisconsin, a contractual choice-of-law provision will usually be enforced, unless enforcement would contravene "important public policies of the state whose law would be applicable if the parties' choice of law provision were disregarded." *Henderson v. United States Bank, N.A.*, 615 F. Supp. 2d 804, 808 (E.D. Wis. 2009) (quoting *Drinkwater v. Am. Family Mut. Ins. Co.*, 2006 WI 56, 290 Wis. 2d 642, 652, 714 N.W.2d 568 (2006)). Here, the underlying agreement provides that Kansas law governs the interpretation of the arbitration clause. (Docket #6 Ex. A). While not argued by the parties, the court can only conclude that, if not for the choice of law clause in the agreement, the law governing the interpretation of the arbitration clause would be Wisconsin law, as Wisconsin appears to have the most contacts with respect to the parties' agreements given the residency of the plaintiff and the location of where the loan services were rendered. *See Sybron Transition Corp. v.*

*Security Ins. Co.*, 107 F.3d 1250, 1255 (7th Cir. 1997) (discussing Wisconsin's "grouping-of-contacts approach" to choice of law in contract cases). Hence, the first issue the court must resolve is whether any public policy of the state of Wisconsin would prevent the enforcement of the underlying arbitration agreement. *Henderson*, 615 F. Supp 2d. at 808.

The only public policy argument raised by the plaintiff as to why the arbitration provision cannot be enforced is that the provision is "unconscionable."[2] (Pl.'s Resp. Br. at 4). Under Wisconsin law, in order for an arbitration agreement to be declared invalid as unconscionable, the provision "must be determined to be both procedurally and substantively unconscionable," *Wis. Auto Title Loans, Inc. v. Jones*, 290 Wis. 2d 514, 531-32, 714 N.W.2d 155 (2006), meaning the court must find unconscionability in both: (1) the factors that bear on the formation of the contract; and (2) the contract terms themselves. *Westerfield v. Quizno's Franchise Co., LLC*, 527 F. Supp. 2d 840, 852 (E.D. Wis. 2007). "Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Discount Fabric House of Racine, Inc. v. Wisconsin Tel. Co.*, 117 Wis. 2d 587, 345 N.W.2d 417, 424 (1984). The central argument the plaintiff raises as to

---

[2] "Common law which make[s] a particular . . . contract provision unenforceable . . . or that are designed to protect a weaker party against the unfair exercise of superior bargaining power by another party" are valid public policy reasons for not applying a choice of law clause in a contract. *Bush v. National School Studios, Inc.*, 139 Wis. 2d 635, 643, 407 N.W.2d 883 (1987).

why the agreement is unconscionable is that the agreement contained "boilerplate language" that was "not bargained for." (Pl.'s Resp. Br. at 7). The plaintiff's argument is premised on the argument that he did not actually sign the agreement, *id.,* ("[The] provision is . . . completely unconscionable . . . because again, Plaintiff did not sign this agreement"), but Mr. Wallis does not present any admissible evidence to support such an assertion. Moreover, "adhesion contracts generally are valid," *Scaffidi v. Fiserv, Inc.*, 218 Fed. Appx. 519, 521 (7th Cir. 2007), and Wisconsin law presumes arbitration provisions to be valid. *Wis. Auto Title Loans, Inc.*, 714 N.W.2d at 163-64. There is no coherent reason as to why the arbitration was so "one-sided," as the plaintiff asserts (Pl.'s Br. at 7), to overcome the presumptions afforded the underlying agreement by Wisconsin law. In fact, the arbitration provisions are anything but "one sided," as either party can elect to arbitrate a dispute related to the contract. (Docket #6 Ex. A at 3). More broadly, the bald assertion that a clause that allows for arbitration is, in and of itself, unconscionable has been squarely rejected by the Seventh Circuit, as the enforcement of the arbitration clause at issue here would merely place the resolution of this dispute in another forum. *See Carbajal v. H&R Block Tax Servs.*, 372 F.3d 903, 906 (7th Cir. 2004) ("The cry of 'unconscionable' just repackages the tired assertion that arbitration should be disparaged as second-class adjudication . . . [p]eople are free to opt for bargain-basement adjudication.") The plaintiff states that the terms of the arbitration agreement are so broad that "any action the defendant

takes against plaintiff to try and collect [the] debt would be subject to binding arbitration," rendering the term unconscionable. (Pl.'s Resp. Br. at 6). However, the breadth of the arbitration provision of the agreement does not render the provision unconscionable by itself: indeed, all the arbitration provision provides for is adjudication in a different forum, not for some sort of predetermined outcome. *Carbajal,* 372 F3d at 906.

Given that there are no public policy reasons for applying Kansas law, the court will apply Kansas' law of contracts in determining whether a binding arbitration agreement exists in this case. The only remaining cogent argument[3] the plaintiff has as to why this matter is not ripe for arbitration is that "the claims encompassed by the arbitration agreement do not include the defendant's conduct." The scope of the arbitration agreement is a matter of interpreting the terms of its provisions. Under Kansas law, a court must enforce a contract's "clear and unambiguous" terms pursuant to those terms' "plain, ordinary, and popular sense." *Payless Shoesource, Inc. v. Travelers Cos., Inc.*, 585 F.3d 1366, 1369 (10th Cir. 2009) (Kansas law). In this case, the arbitration provision provides that the parties to the agreement may

---

[3] The plaintiff argues at the end of his response brief that it would be impossible for the parties to comply with the defendant's arbitration provisions as the American Arbitration Association has said that it will "not administer any consumer debt collection programs." (Pl.'s Resp. Br. at 9). The defendant's reply brief notes that while the American Arbitration Association is unwilling to arbitrate disputes by creditors attempting to collect consumer debt, the organization does continue to arbitrate "complaints consumers have against businesses." (Def.'s Reply Br. at 6). Indeed, the defendant provides evidence that the American Arbitration Association has agreed to arbitrate a similar dispute over Ad Astra's debt collection practices. *Id.* Given the defendant's response and the lack of any follow up by the plaintiff, the court surmises that the plaintiff's impossibility argument was made in error.

elect to require arbitration of "any Claim." (Docket #6 Ex. A at 3). The agreement goes on to define the word "Claim" to include a "dispute" between a party to the agreement and any "related parties," including Ad Astra. *Id.* at 3-4. The agreement also contemplates that a "Claim" can include a dispute that "relates to" the "collection of any amounts" Mr. Wallis' owes. *Id.* at 3. In short, the agreement allows for any party to require arbitration of a dispute between Mr. Wallis and Ad Astra over the collection of any amounts the plaintiff owes to Speedy Cash – i.e. the present litigation. Given the clear language of the agreement and given that Speedy Cash has elected to have this dispute be subject to arbitration, the court must conclude that the underlying agreement necessitates arbitration of this matter.

As the Seventh Circuit Court of Appeals "has noted on numerous occasions, the proper course of action when a party seeks to invoke an arbitration clause is to stay the proceedings rather than to dismiss outright." *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 561 (7th Cir. 2008) (internal citations omitted). Accordingly, the court will stay this action pending arbitration.

Accordingly,

**IT IS ORDERED** that defendant's motion to compel arbitration and stay the action (Docket #4) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that this case be and the same is hereby **STAYED** pending the outcome of arbitration; the parties shall notify the court in writing of the resolution of arbitration when one has been reached.

The Clerk is directed to administratively close this case for statistical purposes.

Dated at Milwaukee, Wisconsin, this 24th day of February, 2011.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge